IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

UNITED FOOD AND COMMERCIAL  *
WORKERS UNIONS AND  *
PARTICIPATING EMPLOYERS HEALTH  *
AND WELFARE FUND,  *
    Plaintiff,  *  Civil Action No. AW-12-00802
          *
    v.  *
          *
JARMEL MOORE,  *
    Defendant.
*************************************************************************

**Memorandum Opinion**

The matter before the Court is Plaintiff's Motion for Default Judgment against Defendant Jarmel Moore. Doc. No. 8. The Court has reviewed the motion papers and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2010). Plaintiff's motion will be granted for the reasons articulated below.

I.    **FACTUAL & PROCEDURAL BACKGROUND**

The following facts are drawn from the Complaint and its attached documents. United Food and Commercial Workers Unions & Participating Employers Health and Welfare Fund (the "Fund") brought this action against Jarmel Moore ("Moore") under the Employee Retirement Income Security Act of 1974 ("ERISA"), seeking recovery of disability benefits advanced to Moore. *See* Compl.

The Fund is an employee welfare benefit plan that provides accident and sickness benefits to covered employees. *Id.* ¶ 1. On or about December 4, 2008, Moore executed a Claim seeking accident and sickness benefits under the Plan as a result of a work-related injury that had occurred the prior month. *Id.* ¶ 6. The plan of benefits (the "Plan") provides that accident and

sickness benefits are not payable if the participant's injury is compensable under Workers' Compensation legislation. *Id.* ¶ 7. However, the Plan provides that the Fund will advance such benefits while awaiting the decision of the Workers' Compensation Commission (the "Commission"). *Id.* If the Commission determines that a participant's claim is compensable, the Plan requires the participant to reimburse the Fund for all benefits advanced. *Id.*

On or about December 23, 2008, the Fund advanced Moore accident and sickness benefits of $12,135.65 for the period of November 13, 2008 through May 13, 2009. *Id.* ¶ 10. In order to receive the advance, Moore signed an agreement in which he promised to "return all monies paid by the Fund as a result of the injury or disability if the Commission determines that my claim is compensable or overturns the denial of my claim. Such repayment will be made to the Fund within 5 days of having received payment as a result of the Commission's decision." *Id.* ¶ 9; Doc. No. 1 Ex. 1 ¶ 6.

On July 14, 2009, the Commission awarded Moore compensation in the amount of $592 per week for the period beginning November 8, 2009 and continuing during the period of temporary total disability. Compl. ¶ 17. As a result, pursuant to the agreement signed by Moore on December 23, 2008, Moore became obligated to repay the sums advanced by the Fund. Despite notification by Fund counsel of his payment obligations, however, Moore failed to reimburse the fund. *Id.* ¶¶ 18, 22.

On October 17, 2011, Moore returned to work for a brief period and became entitled to Fund benefits. *Id.* ¶ 20. Because Moore had not yet repaid any of the $12,135.65 owed to the Fund, the Fund offset benefits of $4,882.80 from the $12,135.65 owed. *Id.* As a result, the balance of Moore's debt to the Fund was reduced to $7,252.85. Despite repeated demands for payment, Moore has failed to reimburse the Fund the outstanding $7,252.85. *Id.* ¶ 22.

On March 14, 2012, the Fund brought suit against Moore to collect the outstanding amount owed. Moore was properly served with the summons and Complaint on April 4, 2012, and failed to plead or otherwise defend in this action as directed in the summons and as provided by Rule 55 of the Federal Rules of Civil Procedure. As a result, the Clerk entered an Order of Default against Moore on May 7, 2012. Now, the Fund moves for a default judgment against Moore in the amount of $13,666.95, representing the $7,252.85 amount owed, plus attorneys' fees of $5,962.50 and costs of $451.60.

## II.   STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 55(b)(1), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *See Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002). The Fourth Circuit has a "strong policy" that "cases be decided on the merits," *Dow*, 232 F. Supp. 2d at 494 (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), but default judgment may be appropriate where a party is unresponsive. *See S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

Upon entry of default, the well-pled allegations in a complaint as to liability are taken as true, but the allegations as to damages are not. *Lawbaugh*, 359 F. Supp. 2d at 422. Federal Rule of Civil Procedure 54(c) limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Thus, where a complaint specifies the amount of damages sought,

the plaintiff is limited to entry of a default judgment in that amount. "[C]ourts have generally held that a default judgment cannot award additional damages … because the defendant could not reasonably have expected that his damages would exceed that amount. *In re Genesys Data Tech., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000). Where a complaint does not specify an amount, "the court is required to make an independent determination of the sum to be awarded." *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (citing *S.E.C. v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981)).

While the court may hold a hearing to prove damages, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum." *Adkins*, 180 F. Supp. 2d at 17 (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)); *see also Laborers' Dist. Council Pension v. E.G.S., Inc.*, Civ. No. WDQ-09-3174, 2010 WL 1568595, at *3 (D. Md. Apr.16, 2010) ("on default judgment, the Court may only award damages without a hearing if the record supports the damages requested").

### III.   ANALYSIS

#### A.   Liability for Unjust Enrichment

The Fund claims that Moore is liable for unjust enrichment for failure to repay the amounts advanced pursuant to the parties' agreement. In order to state a claim for unjust enrichment, the plaintiff must show: (1) a benefit conferred upon the defendant by the plaintiff; (2) a defendant's appreciation or knowledge of the benefit; and (3) the defendant's acceptance or retention of the benefit under circumstances that would make it inequitable for the defendant to retain the benefit without the payment of its value. *Haley v. Corcoran*, 659 F. Supp. 2d 714, 723 n.9 (D. Md. 2009) (citing *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (2007)).

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive pre-emption provisions … which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523 (1981)). Due to the expansive scope of ERISA, common law claims brought in ERISA actions are generally subject to preemption. Nevertheless, the Fourth Circuit has carved out a narrow exception for unjust enrichment claims where there is a specific provision of a policy or contract providing for reimbursement of erroneously paid benefits. *Compare Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 993 (4th Cir. 1990) (fashioning a federal common law rule allowing an ERISA plaintiff to recover for unjust enrichment), *with Provident Life & Accident Ins. Co. v. Cohen*, 423 F.3d 413, 426 (4th Cir. 2005) (narrowing the scope of *Waller* to allow unjust enrichment claims only when a specific provision of the parties' contract provides for the reimbursement of erroneously paid benefits).

Here, Moore received a $12,135.65 advancement from the Fund after signing an agreement with the Fund which provided in relevant part:

> I promise to return all monies paid by the Fund as a result of the injury or disability if the Commission determines that my claim is compensable or overturns the denial of my claim. Such repayment will be made to the Fund within 5 days of having received payment as a result of the Commission's decision.

Doc. No. 1 Ex. 1 ¶ 5. Although this provision does not deal directly with reimbursement of erroneously paid benefits, it appears analogous in purpose and result to such a provision. Moore's right to receive compensation from the Fund became effectively invalid or erroneous at the time Moore was granted the right to receive such compensation from the Commission. The terms of Moore's agreement with the Fund specifically provide for this result. As such, allowing

5

an unjust enrichment claim here appears to effectuate the Fourth Circuit's rationale in *Cohen* and *Waller*. Thus, the Court finds that the Fund's unjust enrichment claim is cognizable.

Further, based on the Complaint's well-pleaded allegations, the Court determines that Moore has been unjustly enriched in the amount of $7,252.85, and the Fund is entitled to restitution of this amount. The Fund has properly alleged that it conferred a benefit of $12,135.65 on Moore with Moore's knowledge and consent, and that retention of $7,252.85 of that benefit would be inequitable now that Moore has been compensated by the Commission. Therefore, Moore is liable to the Fund for $7,252.85, and default judgment is proper on the Fund's claim.

B. <u>Attorneys' Fees</u>

Additionally, the Fund seeks attorneys' fees and costs. A Court may award attorneys' fees in an ERISA action to any party who achieves "some degree of success on the merits." *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 634 (4th Cir. 2010) (quoting *Hardt v. Reliance Std. Life. Sins. Co.*, 130 S. Ct. 2149 (2010)). Where liability is established by default judgment, plaintiffs are eligible to recover their litigation costs as well as reasonable attorneys' fees and expenses. *See, e.g., Mineo Corp. v. Rowe*, No. 2:07–CV–57–H, 2011 WL 841058, at *2 (E.D.N.C. Mar. 4, 2011). In deciding whether to make an award of attorney's fees, the Court must consider five factors: (1) any bad faith by the opposing party, (2) the ability of the opposing party to satisfy an award of attorney's fees, (3) whether an award of attorney's fees would deter other persons acting under similar circumstances, (4) whether the requesting party sought to benefit all participants in a plan or to resolve a significant question of law regarding ERISA itself, and (5) the relative merits of the parties' positions. *Williams*, 609 F.3d at 635 (citation omitted).

An award of attorneys' fees is proper in this instance. Upon entry of default, the facts set forth in the Fund's Complaint are deemed admitted, and Moore's liability established. The Fund has shown that it suffered losses due to Moore's failure to remit the $7.252.85 owed under the parties' agreement. Recovery of Fund assets will benefit Fund participants and beneficiaries and may deter future participants from similarly retaining sums to which they are no longer entitled.

In determining that the Fund is entitled to attorneys' fees, the Court must now determine whether the fees requested are reasonable. As an initial matter, the Court notes that the Fund requests reimbursement of pre-litigation attorneys' fees from the period of November 9, 2011 until March 14, 2012 when this suit was filed. Recovery of such fees appears to be proper pursuant to the parties' December 23, 2008 agreement in which Moore promised to "pay all costs and expenses, including attorney's fees, incurred by the Fund in connection with the collection of any amounts due hereunder or the enforcement of any rights provided for in this Agreement, regardless of whether a suit is filed." Doc. No. 1 Ex. 1 ¶ 9.

Next, the Court must determine the reasonable hourly rate to be applied. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "Generally, a reasonable hourly rate is calculated according to the prevailing market rates in the relevant community." *Flores v. Life Ins. Co. of N. Am.*, 770 F. Supp. 2d 768, 776 (D. Md. 2011) (citing *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). "This determination is made by assessing the attorney's experience and skill, and comparing his rate to the rates charged by lawyers of reasonably comparable skill, experience, and reputation." *Id.* (citing *Blum*, 465 U.S. at 895 n.11).

The Fund requests attorneys' fees of $5.962.50 based upon 13.7 hours of attorney time and 10.2 hours of legal assistant time. The Fund has hired attorneys from the Washington, DC firm Slevin and Hart PC, which charges rates between $250 and $445 for attorney time and

between $165 and $170 for legal assistant time. The Court notes that rates ranging from $375 to $445 are high, although reasonable for sophisticated and high-stakes legal work in Washington, DC. The legal work here does not appear to involve any large sums or otherwise high stakes though; the Fund seeks only $7,262.85 from Moore. Additionally, given Moore's failure to appear and defend in this action, the suit did not evolve so as to utilize the full benefit of the attorneys' expertise. The Court acknowledges the substantial experience and expertise of Slevin & Hart attorneys, particularly in the field of employee benefits law. Given the relatively small sums at stake and Moore's failure present any defense in this action, however, the Court finds that a reasonable hourly rate would be no greater than $325. Accordingly, the Court finds that the Fund is entitled to attorneys' fees of $5,680, a sum reached by reducing the hourly rates of Mr. Slevin, Ms. Sanchez, and Ms. Harlan to $325.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Default Judgment will be granted. A separate Order will follow.

May 14, 2012
Date

/s/
Alexander Williams, Jr.
United States District Judge